NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————

**IN RE:  MARK DWAYNE EBERRA,**
*Appellant*

———————

2017-2394

———————

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 12/230,058.

———————

Decided: May 4, 2018

———————

MARK DWAYNE EBERRA, Kansas City, KS, pro se.

NATHAN K. KELLEY, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Andrei Iancu.  Also represented by KAKOLI CAPRIHAN, MAI-TRANG DUC DANG, THOMAS W. KRAUSE.

———————

Before PROST, *Chief Judge,* DYK and O'MALLEY, *Circuit Judges.*

PER CURIAM.

This is an appeal from a rejection in initial examination of appellant Mark Eberra's patent application titled "Business Method for Opening and Operating a National

Television Network" with serial number 12/230,058 ("the '058 application"). The Examiner rejected all claims of the '058 application as patent-ineligible under 35 U.S.C. § 101 and as anticipated by U.S. Patent Application Publication No. 2005/0015267 A1 ("Barringer") under 35 U.S.C. § 102. The Patent Trial and Appeal Board ("Board") initially affirmed the Examiner's anticipation rejection without reaching the § 101 issue. Then, on rehearing, the Board affirmed the Examiner's rejection under both § 101 and § 102. Mr. Eberra appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

I

Section 101 provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has held, however, that "[l]aws of nature, natural phenomena, and abstract ideas" are implicit exceptions to the language of § 101 and are not patentable subject matter. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013)); *accord Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70–77 (2012).

To determine whether a claim is patentable under § 101, the Supreme Court has instructed us to use a two-step framework.[1] *Alice*, 134 S. Ct. at 2355. First, a court

---

[1]    Much of Mr. Eberra's argument is devoted to the idea that the *Mayo/Alice* framework should only be applied if a court first determines that a claim is not "legally integrated." Appellant Br. 15; *see also id.* at 10–17; Appellant Reply Br. 5–10. He argues that the Board erred by failing to perform this initial "[i]ntegration [a]nalysis," which involves "determining if a new and useful claim

must determine whether the claim is directed to a patent-ineligible concept, i.e., a law of nature, a natural phenomenon, or an abstract idea. *Id.* If so, the court must proceed to step two and ask whether the elements of the claim, considered "both individually and 'as an ordered combination,'" add enough to "'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 566 U.S. at 78–79).

The '058 application describes a business method for providing a television network "that requires the masses of the general public to purchase products in exchange for being allowed to perform in television programs shown on the network." J.A. 29. Claim 1, which the Board treated as exemplary, reads:

> 1. A process for providing a television network comprising:
>
>> (a) opening at least one physical location for a production of a television program;
>>
>> (b) requiring at least one customer to make a purchase of a product;
>>
>> (c) allowing said customer to give a performance in said production of said television

---

recites a Supreme Court created Judicial exception, implicit from the statute, that is a law of nature, natural phenomenon, or abstract idea in the form of a fundamental economic practice, or if any of the exceptions are mathematically calculated, statistically analyzed or otherwise practiced on a computer." Appellant Br. 14. On this point, Mr. Eberra is mistaken. As described above, the *Mayo/Alice* framework is the appropriate test to identify patent-eligible subject matter. Moreover, the Board did begin its analysis by determining that the claims are directed to an abstract idea.

program, in exchange for making said purchase of said product;

whereby said purchase made by said customer results in said production of said television program for said performance of said customer on said television network.

*Id.* at 53. Appellant also treats claim 1 as exemplary.

Starting at step one of the *Mayo/Alice* test, we agree with the Board's conclusion that the claims at issue are directed to an abstract idea, namely "promoting the purchase of a product with the incentive being a spot in a television program, i.e. product promotion." J.A. 14. Like the concept of risk hedging, which the Supreme Court found to be an abstract idea in *Bilski v. Kappos*, the concept of product promotion is a "fundamental economic practice long prevalent in our system of commerce." 561 U.S. 593, 609, 611 (2010) (quoting *In re Bilski*, 545 F.3d 943, 1013 (Fed. Cir. 2008) (Rader, J., dissenting), *aff'd*, *id.*).

Appellant argues that the claims are not directed to the abstract idea of product promotion and are instead directed to what the specification describes as a "new Customercast model of television" in which "the basic principle is to attract large numbers of people to perform on television, and require a purchase for the experience." J.A. 30. But the abstract nature of the claims is not altered at step one by the existence of claim limitations (much less characterizations in the specification) that "add a degree of particularity" to the implementation of the abstract idea. *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014). In *Ultramercial*, for instance, we found that the claims were directed to the abstract idea of "using advertising as an exchange or currency", despite the presence of narrowing limitations like "consulting an activity log." *Id.* Here, claim 1, consid-

ered as an ordered combination, simply describes a form of product promotion in which the incentive for purchasing a product is the opportunity to perform in a television program. This is more specific than the concept of product promotion writ large, but it is no less abstract.

## II

Turning to step two, we ask whether the claim limitations, considered individually or as an ordered combination, add an "inventive concept" that transforms the abstract idea of product promotion into a patent-eligible invention that is significantly more than the abstract idea itself. *Alice*, 134 S.Ct. at 2355 (quoting *Mayo*, 566 U.S. at 72). Each specific step in the claims—opening a location (which requires nothing more than finding a location), requiring a purchase, and allowing a performance in a television program—is a routine television-production or advertising activity performed in a conventional way, as described in the specification. Thus, there is no inventive concept, and the claims in the '058 application are not patentable subject matter under § 101.

Because we affirm the Board's determination that the claims are patent-ineligible under § 101, we need not address the Board's decision with respect to anticipation.

### AFFIRMED

### COSTS

No costs.